1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CALEB ELLIS,

11            Petitioner,              No. CIV S-10-1772 GEB DAD P

12       vs.

13   GARY SWARTHOUT,

14            Respondent.            FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises several challenges to the decision of the

18   California Board of Parole Hearings (hereinafter "Board") to deny him parole at his parole

19   consideration hearing held on March 12, 2008.  The matter has been fully briefed by the parties

20   and is submitted for decision.  Upon careful consideration of the record and the applicable law,

21   the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

22   I.  Procedural Background

23            Petitioner is confined pursuant to a 1993 judgment of conviction entered against

24   him in the Alameda County Superior Court following his conviction on charges of first

25   degree murder with use of a firearm and attempted murder with use of a firearm.  (Doc. No. 1 at

26   /////

1

1  2.)  Pursuant to that conviction, petitioner was sentenced to twenty-five years to life in state

2  prison.  (Id.)

3          The parole consideration hearing that is placed at issue by the instant federal

4  habeas petition was held on March 12, 2008.  (Doc. No. 1-1 at 2.)[1]  Petitioner appeared at and

5  participated in that hearing.  (Id. at 4, et seq.)  Following deliberations held at the conclusion of

6  the hearing, the Board panel announced their decision to deny petitioner parole for three years as

7  well as the reasons for that decision.  (Id. at 106-19.)

8          Petitioner first challenged the Board's 2008 decision in a petition for writ of

9  habeas corpus filed in the Alameda County Superior Court.  (Answer, Ex. 1.)  That court denied

10  the petition in a decision on the merits.  (Answer, Ex. 2.)  Petitioner subsequently challenged the

11  Board's 2008 decision in a petition for writ of habeas corpus filed in the California Court of

12  Appeal for the First Appellate District.  (Answer, Ex. 3.)  The California Court of Appeal

13  summarily denied that petition.  (Answer, Ex. 5.)  Petitioner subsequently filed a petition for writ

14  of habeas corpus in the California Supreme Court.  (Answer, Ex. 4.)  That petition was also

15  summarily denied.  (Answer, Ex. 6.)

16          On June 22, 2010, petitioner filed his federal application for habeas relief in this

17  court.  Therein, petitioner raises five claims: (1) the Board's 2008 decision to deny him parole

18  violated his rights to due process and equal protection because it was not supported by "some

19  evidence" that he posed a current danger to society if released from prison, as required under

20  California law; (2) the Board's 2008 decision violated his rights to due process and equal

21  protection because the Board members were biased against him; (3) the Board's assertion that

22  petitioner had not been adequately rehabilitated violates state law, which establishes the purpose

23  of incarceration as punishment and not rehabilitation; (4) the Board violated state law in failing

24  to set a primary term for petitioner; and (5) the Board's 2008 decision was invalid because it was

25

26      [1]  Page number citations such as these are to the page number reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

2

1  issued pursuant to a no-parole policy, in violation of petitioner's rights to due process and equal

2  protection.  (Doc. No. 1 at 1-41.)

3  II.  Standards of Review Applicable to Habeas Corpus Claims

4          An application for a writ of habeas corpus by a person in custody under a

5  judgment of a state court can be granted only for violations of the Constitution or laws of the

6  United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the

7  interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct.

8  13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146,

9  1149 (9th Cir. 2000).

10          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

11  habeas corpus relief:

12          An application for a writ of habeas corpus on behalf of a
        person in custody pursuant to the judgment of a State court shall
13          not be granted with respect to any claim that was adjudicated on
        the merits in State court proceedings unless the adjudication of the
14          claim -

15          (1) resulted in a decision that was contrary to, or involved
        an unreasonable application of, clearly established Federal law, as
16          determined by the Supreme Court of the United States; or

17          (2) resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
18          State court proceeding.

19          For purposes of applying § 2254(d)(1), "clearly established federal law" consists

20  of holdings of the United States Supreme Court at the time of the state court decision.  Stanley v.

21  Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06

22  (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

23  clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at

24  859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010).

25          A state court decision is "contrary to" clearly established federal law if it applies a

26  rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

3

1   Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640

2   (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

3   grant the writ if the state court identifies the correct governing legal principle from the Supreme

4   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2]

5   Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

6   F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

7   simply because that court concludes in its independent judgment that the relevant state-court

8   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9   application must also be unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v.

10  Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

11  habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

12  the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

13  precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

14  the state court's decision."  Harrington v. Richter, 562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

15  (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

16  obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

17  ruling on the claim being presented in federal court was so lacking in justification that there was

18  an error well understood and comprehended in existing law beyond any possibility for fairminded

19  disagreement."  Harrington,131 S. Ct. at 786-87.

20         If the state court's decision does not meet the criteria set forth in § 2254(d), a

21  reviewing court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v.

22  Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th

23  Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because

24

25         [2]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
       overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26  presented in the state court proceeding."  Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011)
       (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

4

1  of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

2  considering de novo the constitutional issues raised.").

3          The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

5  2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

6  from a previous state court decision, this court may consider both decisions to ascertain the

7  reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

8  banc).  "When a federal claim has been presented to a state court and the state court has denied

9  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence

10  of any indication or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at

11  784-85.  This presumption may be overcome by a showing "there is reason to think some other

12  explanation for the state court's decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker,

13  501 U.S. 797, 803 (1991)).  Where the state court reaches a decision on the merits but provides

14  no reasoning to support its conclusion, a federal habeas court independently reviews the record to

15  determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860;

16  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is

17  not de novo review of the constitutional issue, but rather, the only method by which we can

18  determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at

19  853.  Where no reasoned decision is available, the habeas petitioner still has the burden of

20  "showing there was no reasonable basis for the state court to deny relief."  Harrington, 131 S. Ct.

21  at 784.

22          When it is clear, however, that a state court has not reached the merits of a

23  petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a

24  federal habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v.

25  Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.

26  2003).

1  II.  Petitioner's Claims

2      A.  Due Process

3          In petitioner's first claim, he seeks federal habeas relief on the grounds that the

4  Board's 2008 decision to deny him parole, and the findings upon which that denial was based,

5  violated his right to due process because it was not supported by "some evidence" as required

6  under California law.  (Doc. No. 1 at 9-21.)[3]

7          The Due Process Clause of the Fourteenth Amendment prohibits state action that

8  deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

9  due process violation must first demonstrate that he was deprived of a liberty or property interest

10 protected by the Due Process Clause and then show that the procedures attendant upon the

11 deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson,

12 490 U.S. 454, 459-60 (1989).

13         A protected liberty interest may arise from either the Due Process Clause of the

14 United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

15 expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

16 221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

17 Constitution does not, of its own force, create a protected liberty interest in a parole date, even

18 one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

19 Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

20 person to be conditionally released before the expiration of a valid sentence.").  However, a

21 state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

22 /////

23

24         [3]  Petitioner also purports to raise an equal protection challenge on these same grounds.
   However, he has failed to support that claim with facts or citation to relevant authority.
25 Accordingly, his equal protection claim should be rejected.  James v. Borg, 24 F.3d 20, 26 (9th
   Cir. 1994) ("conclusory allegations which are not supported by a statement of specific facts do
26 not warrant habeas relief").

1  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

2  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

3          California's parole scheme gives rise to a liberty interest in parole protected by the

4  federal Due Process Clause.  Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th

5  Cir. 2010); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002); see also Swarthout v.

6  Cooke, 562 U.S. ___ , ___, 131 S. Ct. 859, 861-62 (2011) (finding the Ninth Circuit's holding in

7  this regard to be a reasonable application of Supreme Court authority); Pearson v. Muntz, 639

8  F.3d 1185, 1191 (9th Cir. 2011) ("[Swarthout v.] Cooke did not disturb our precedent that

9  California law creates a liberty interest in parole.")  In California, a prisoner is entitled to release

10  on parole unless there is "some evidence" of his or her current dangerousness.  In re Lawrence,

11  44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).

12          In Swarthout, the Supreme Court reviewed two cases in which California

13  prisoners were denied parole - in one case by the Board, and in the other by the Governor after

14  the Board had granted parole.  Swarthout, 131 S. Ct. at 860-61.  The Supreme Court noted that

15  when state law creates a liberty interest, the Due Process Clause of the Fourteenth Amendment

16  requires fair procedures, "and federal courts will review the application of those constitutionally

17  required procedures."  Id. at 862.  The Court concluded that in the parole context, however, "the

18  procedures required are minimal" and that the "Constitution does not require more" than "an

19  opportunity to be heard" and being "provided a statement of the reasons why parole was denied."

20  Id. (citing Greenholtz, 442 U.S. at 16).  The Supreme Court therefore rejected Ninth Circuit

21  decisions that went beyond these minimal procedural requirements and "reviewed the state

22  courts' decisions on the merits and concluded that they had unreasonably determined the facts in

23  light of the evidence."  Swarthout, 131 S. Ct. at 862.  In particular, the Supreme Court rejected

24  the application of the "some evidence" standard to parole decisions by the California courts as a

25  /////

26  /////

7

1    component of the federal due process standard.  Id. at 862-63.[4]  See also Pearson, 639 F.3d at

2    1191.

3            Under the Supreme Court's decision in Swarthout this court may not review

4    whether California's "some evidence" standard was correctly applied in petitioner's case.  131 S.

5    Ct. at 862-63; see also Miller v. Oregon Bd. of Parole and Post-Prison Supervision, 642 F.3d

6    711, 716 (9th Cir. 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context

7    of parole eligibility decisions the due process right is procedural, and entitles a prisoner to

8    nothing more than a fair hearing and a statement of reasons for a parole board's decision[.]");

9    Roberts v. Hartley, 640 F.3d 1042, 1045-46 (9th Cir. 2011) (under the decision in Swarthout,

10   California's parole scheme creates no substantive due process rights and any procedural due

11   process requirement is met as long as the state provides an inmate seeking parole with an

12   opportunity to be heard and a statement of the reasons why parole was denied); Pearson, 639

13   F.3d at 1191 ("While the Court did not define the minimum process required by the Due Process

14   Clause for denial parole under the California system, it made clear that the Clause's requirements

15   were satisfied where the inmates 'were allowed to speak at their parole hearings and to contest

16   the evidence against them, were afforded access to their records in advance, and were notified as

17   to the reasons why parole was denied.'")

18           The federal habeas petition pending before the court in this case reflects that

19   petitioner was represented by counsel at his 2008 parole suitability hearing.  (Doc. No. 1-1 at 84.)

20   As noted above, the record also establishes that at that hearing petitioner was given the

21   opportunity to be heard and received a statement of the reasons why parole was denied by the

22

23      _____
24           [4] In its per curiam opinion the Supreme Court did not acknowledge that for twenty-four
     years the Ninth Circuit had consistently held that in order to comport with due process a state
     parole board's decision to deny parole had to be supported by "some evidence," as defined in
25   Superintendent v. Hill, 472 U.S. 445 (1985), that bore some indicia of reliability.  See Jancsek v.
     Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); McQuillion v. Duncan, 306 F.3d
26   895, 904 (9th Cir. 2002) ("In Jancsek . . . we held that the process that is due in the parole
     rescission setting is the same as the Supreme Court outlined in Superintendent v. Hill . . . .")

1    Board panel.  That is all the process that was due petitioner under the Constitution.  <u>Swarthout</u>,

2    131 S. Ct. 862; <u>see</u> <u>also</u> <u>Miller</u>, 642 F.3d at 716; <u>Roberts</u>, 640 F.3d at 1045-46; <u>Pearson</u>, 639 F.3d

3    at 1191.  It now plainly appears that petitioner is not entitled to relief with respect to his due

4    process claim.  Accordingly, that claim should be rejected.

5            B.  <u>Bias of Panel Members</u>

6                    In petitioner's next ground for relief, he claims that the Board's 2008 parole

7    suitability decision was "invalid" because the Board panel members were biased against him.

8    (Doc. No. 1 at 22.)  In support of this claim, petitioner points to comments by several Board

9    members to the effect that they did not believe petitioner's description of his involvement in the

10   crime of conviction.  (<u>See</u>, <u>e.g.</u>, Doc. No. 1 at 84 ("Are you wanting us to believe that you had

11   nothing to do with this crime and that you weren't even there?  Is that what I'm to understand?");

12   <u>id.</u> at 108 ("We don't believe your version of the story"); <u>id.</u> at 109 ("I'm not going to be the only

13   person sitting on this side of the table that's going to have trouble with your story"); <u>id.</u> at 110-11

14   ("All I can say about this particular commitment offense is that if you did it, you need to own up

15   to it, sir.  Because your side just doesn't seem to calculate into anything anywhere.").  Petitioner

16   argues that these comments by panel members demonstrate that the Board "improperly deemed

17   Petitioner's consistent assertion of actual innocence [as] 'proof' of his unsuitability for parole."

18   (<u>Id.</u> at 23.)  Petitioner also argues that these comments by the Board violated California

19   regulations which allow a prisoner to decline to discuss the facts of the crime.  (<u>Id.</u> at 24.)

20                   Petitioner next argues that the Board panel members did not represent a cross-

21   section of the community and therefore could not conduct a fair suitability hearing, in violation

22   of his rights under state law and the federal due process clause.  (<u>Id.</u> at 24-25.)  In support of this

23   claim, petitioner cites California Penal Code § 5075(b), which states, in relevant part: "The

24   selection of persons and their appointment by the Governor and confirmation by the Senate shall

25   reflect as nearly as possible a cross section of the racial, sexual, economic, and geographic

26   features of the population of the state."  Finally, petitioner argues that the Board operates under a

1    "no-parole" policy, which further demonstrates "the bias at Petitioner's 2008 hearing."  (Id. at

2    24.)  In short, petitioner argues that the Board's 2008 decision to deny him parole was based on

3    group bias and not on the required "individualized consideration of all factors tending to

4    establish suitability for parole."

5          The Ninth Circuit Court of Appeals has acknowledged that California inmates

6    have a due process right to parole consideration by neutral decision-makers.  See O'Bremski v.

7    Maass, 915 F.2d 418, 422 (9th Cir. 1990) (an inmate is "entitled to have his release date

8    considered by a Board that [is] free from bias or prejudice").  Accordingly, parole board officials

9    owe a duty to potential parolees "to render impartial decisions in cases and controversies that

10    excite strong feelings because the litigant's liberty is at stake."  Id. (quoting Sellars v. Procunier,

11    641 F.2d 1295, 1303 (9th Cir. 1981)).  Indeed, "a fair trial in a fair tribunal is a basic requirement

12    of due process."  In re Murchison, 349 U.S. 133, 136 (1955).  Petitioner is therefore correct that

13    he was entitled to have his parole release date considered by a Board that was free of bias or

14    prejudice.  However, petitioner has submitted no evidence demonstrating that the Board was

15    under any pressure from the Governor's office to deny him parole because of a "no-parole

16    policy" or that any individual panel member was otherwise biased against him at the time of his

17    2008 parole hearing.  The fact that certain Board panel members doubted petitioner's version of

18    the events surrounding his crime of conviction does not demonstrate bias.

19          Petitioner's claim that the Board's failure to represent a cross-section of the

20    community violates the California Penal Code is not cognizable in this federal habeas action.

21    See Wilson, 131 S. Ct. at 16; Rivera v. Illinois, 556 U.S. 148, ___, 129 S. Ct. 1446, 1454 (2009)

22    ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac, 456

23    U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)).  Petitioner

24    has also failed to demonstrate that the constitution of the Board at the time of his 2008 hearing

25    violated California Penal Code § 5075(b) or that any violation of state law constituted a due

26    /////

1  process violation in the context of this case.  Accordingly, petitioner is not entitled to federal

2  habeas relief with respect to this claim.

3     C.  Reliance on Rehabilitation to Deny Parole

4          In his next ground for relief, petitioner claims that the Board panel at his 2008

5  hearing improperly advised him to participate in additional prison programming and to "keep

6  moving in the right direction."  (Doc. No. 1 at 26.)  Petitioner argues that requiring "further

7  rehabilitation . . . as an absolute prerequisite to any possible future finding of suitability for

8  parole" violates the legislative intent underlying California's Determinate Sentencing Law, which

9  emphasizes "culpability and . . . uniformity of punishment" over "rehabilitation."  (Id. at 26-27.)

10 Petitioner summarizes the nature of his claim in this regard as follows:

> In sum, since the legislature expressly intended that incarceration
> suit the crime and not some archaic disproven concept of
> rehabilitation, the Board violated Petitioner's State and federal
> right to due process of law by continuing his custody by deeming
> him insufficiently "rehabilitated."  Although the Board improperly
> invoked equally baseless vague and conclusory boilerplate
> focusing on the commitment offense and his prison misconduct, its
> vague demands for additional rehabilitation are uniquely illicit
> because that is exactly what the State legislature has condemned as
> archaic and pointless.

17 (Id. at 27.)

18         Petitioner's claim that the Board's reliance on rehabilitation violates the theory

19 underlying California's Determinate Sentencing Law is not cognizable in this federal habeas

20 corpus action.  Rivera, 129 S. Ct. at 1454 ("[A] mere error of state law . . . is not a denial of due

21 process").  To the extent petitioner is arguing that the Board's suggestion that he engage in prison

22 programming constituted a federal due process violation, his claim must also be rejected.  As set

23 forth above, the United States Supreme Court has now held that under the federal due process

24 clause petitioner is entitled only to an opportunity to be heard and a statement of the reasons for

25 the denial of parole.  Because petitioner received both an opportunity to be heard and a statement

26 /////

1  of reasons for the denial of parole here, the Board's 2008 decision did not violate his right to due

2  process.  Accordingly, petitioner is not entitled to federal habeas relief on this claim.

3      D.  Board's Failure to Set a Primary Term

4          In petitioner's next claim, he argues that the Board violated state law again when it

5  failed to "determine and set a presumptive term of prison custody."  (Doc. No. 1 at 30.)

6  Specifically, he alleges that "the Board failed to set a primary term – a duty imposed by state law

7  that is entirely separate from its talk of determining current parole suitability."  (Id.)  Petitioner

8  also appears to be arguing that the Board deprived him of due process by failing to apply certain

9  criteria applicable under California's Indeterminate Sentencing Law to his case, even though he

10  was sentenced under the Determinate Sentencing Law.  (Pet. at 6.)  One thing is clear, both of

11  these claims are based on alleged violations of state law.  As such, they are not cognizable in this

12  federal habeas proceeding.

13          In any event, petitioner's claim regarding application of the Indeterminate

14  Sentencing Law is foreclosed by the decision in Connor v. Estelle, 981 F.2d 1032 (9th Cir. 1992),

15  in which the Ninth Circuit held that application of the DSL, rather than the ISL, suitability criteria

16  does not violate either due process or equal protection, nor does it violate the Ex Post Facto

17  Clause, because "[t]he ISL and DSL guidelines apply identical criteria in determining parole

18  suitability."  981 F.2d at 1034-35 (citing In re Duarte, 143 Cal. App. 3d 943, 951 (1983)).

19          The court also finds that petitioner's claim regarding the alleged failure of the

20  Board to set a "primary term" lacks merit.  California parole guidelines require the setting of a

21  "base term for each life prisoner who is found suitable for parole."  15 California Code of

22  Regulations ("C.C.R.") § 2403(a).  The "base term" is "established by utilizing the appropriate

23  matrix of base terms" provided in 15 C.C.R. § 2403.  15 C.C.R. § 2403(a).  However, petitioner

24  has not yet been found suitable for release on parole, "which is a prerequisite for the

25  determination of a 'base term' and the calculation of a parole date."  Murphy v. Espinoza, 401 F.

26  Supp.2d 1048, 1055 (C.D. Cal. 2005); see also Irons v. Carey, 505 F.3d 846, 851 n.3 (9th Cir.

1 2007) (A "'determination of an individual inmate's suitability for parole under section 3041,

2 subdivision (b) must precede any effort to set a parole release date under the uniform-term

3 principles of section 3041, subdivision (a)'") (quoting In re Dannenberg, 34 Cal.4th 1061,

4 1079-80 (2005)); Cal. Penal Code § 3041(b) (The Board "shall set a release date unless it

5 determines that the gravity of the current convicted offense or offenses, or the timing and gravity

6 of current past convicted offense or offenses, is such that consideration of the public safety

7 requires a more lengthy period of incarceration for this individual, and that a parole date,

8 therefore, cannot be fixed at this meeting."); 15 C.C.R. § 2402(a) (The Board "shall first

9 determine whether the life prisoner is suitable for release on parole.  Regardless of the length of

10 time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of

11 the [Board] the prisoner will pose an unreasonable risk of danger to society if released from

12 prison.").  "In other words, absent a determination of parole suitability by the [Board], there is no

13 'base term.'" Murphy, 401 F. Supp.2d at 1055.  See also Cal. Penal Code § 3041(b); 15 C.C.R.

14 2403(a).

15   E. No-Parole Policy

16     In his final ground for federal habeas relief, petitioner claims that the Board found

17 him unsuitable for parole based on a "no-parole" policy and not on an individualized

18 consideration of his risk factors.  (Doc. No. 1 at 39.)  Petitioner notes that several courts have

19 concluded that a "no-parole" policy existed under the administrations of former California

20 Governors Pete Wilson and Gray Davis.  (Id. at 39-40.)

21     As noted above, petitioner is entitled to "a fair trial in a fair tribunal."  In re

22 Murchison, 349 U.S. at 136.  However, petitioner has submitted no evidence to this court

23 demonstrating that the Board operated under a no-parole policy under the administration of

24 Governor Arnold Scwarzenegger when petitioner was denied parole at his 2008 hearing.

25 Therefore, petitioner is not entitled to federal habeas relief with respect to this claim.

26 /////

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board), overruled in part by Swarthout, 131 S. Ct. 859 (2011).

DATED: August 20, 2011.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
ellis1772.hc

14